UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THOMAS JACKSON, EMMA JACKSON, TJ AUTO BODY SERVICES, INC. dba "TJ ENTERPRISES", <br><br> Plaintiffs, <br><br> v. <br><br> FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, BRUCE H. BAILEY, JAMES GILLIS, and STEVEN EASON, <br><br> Defendants. | CIV. NO. 2:14-00250 WBS AC <br><br> MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiffs Thomas and Emma Jackson and TJ Autobody Services, Inc. ("TJ") allege Farmers Insurance Exchange ("Farmers") removed TJ from its "Circle of Dependability" Program for discriminatory reasons. The individually named defendants were Farmers employees during the period relevant to the action. Presently before the court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

1

I. Factual and Procedural Background

The Jacksons, who are both black, were the owners of TJ until they sold the shop in 2013. From approximately 2003 through February 2012, TJ was a member of Farmers' "Circle of Dependability" ("COD") Program. As a member of the COD Program, TJ was on a list of repair shops that Farmers recommends to its insureds. The COD arrangement is mutually beneficial to both the insureds and the repair shops, providing the insureds with quality repair shops and the repair shops with increased business from referrals.

TJ and Farmers entered into the COD Services Agreement on May 3, 2011, which governed the parties' relationship thereafter. (See Gillis Decl., Ex. A (Docket No. 57-6).) The agreement required TJ to meet specific quality standards in order to remain in the Program. The agreement also contained a termination clause, permitting Farmers to terminate the agreement "for convenience and without cause" upon thirty days written notice to TJ.

Several COD consultants[1] assigned to overseeing TJ's compliance observed that TJ failed to meet several of the quality standards set by Farmers. For instance, from an audit it was discovered that TJ was repairing vehicles over the total loss threshold, which is when the cost of repair exceeds the value of the vehicle. In summer of 2011, one of TJ'S customers who had been referred to TJ via the COD Program contacted a COD

---

[1] To enforce the COD quality standards, Farmers uses "COD consultants" who review monthly metrics, performance criteria, and repair-cycle turn-around times with COD shop owners.

consultant to complain about repairs TJ had done on his Lexus. During an inspection, Farmers discovered that TJ had charged for repairs it never made and foiled several of the repairs it did make on the Lexus.  The vehicle was declared a "total loss" and sold at salvage.

Farmers put TJ on a thirty-day suspension from the COD Program.  Following the suspension, another Farmers customer complained that TJ did not honor a lifetime warranty on his paint job, which had begun to peel.  Thereafter, Farmers made the decision to permanently remove TJ from the COD Program.

Plaintiffs allege that Farmers' proffered reasons for removing TJ from the COD Program are pretextual for race discrimination.  In addition to state law claims for breach of contractual duty, breach of contract and implied covenant of good faith and fair dealing, plaintiffs brought federal claims for interfering with the right to make and enforce contracts in violation of 42 U.S.C. § 1981 and conspiracy to deprive someone of rights or privileges in violation of 42 U.S.C. § 1985(3). Defendants now move for summary judgment on all of plaintiffs' claims.

II. Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

1  (1986).  The party moving for summary judgment bears the initial
2  burden of establishing the absence of a genuine issue of material
3  fact and can satisfy this burden by presenting evidence that
4  negates an essential element of the non-moving party's case.
5  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
6  Alternatively, the moving party can demonstrate that the non-
7  moving party cannot produce evidence to support an essential
8  element upon which it will bear the burden of proof at trial.
9  Id.
10        Once the moving party meets its initial burden, the
11  burden shifts to the non-moving party to "designate 'specific
12  facts showing that there is a genuine issue for trial.'"  Id. at
13  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,
14  the non-moving party must "do more than simply show that there is
15  some metaphysical doubt as to the material facts."  Matsushita
16  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
17  "The mere existence of a scintilla of evidence . . . will be
18  insufficient; there must be evidence on which the jury could
19  reasonably find for the [non-moving party]."  Anderson, 477 U.S.
20  at 252.
21        In deciding a summary judgment motion, the court must
22  view the evidence in the light most favorable to the non-moving
23  party and draw all justifiable inferences in its favor.  Id. at
24  255.  "Credibility determinations, the weighing of the evidence,
25  and the drawing of legitimate inferences from the facts are jury
26  functions, not those of a judge . . . ruling on a motion for
27  summary judgment . . . ."  Id.
28        Plaintiffs' counsel failed to file a timely opposition

1  to defendants' motion.  After repeated reminders from the clerk
2  that the deadline had passed, counsel finally informed the court
3  on Friday, August 14 that he intended to belatedly file an
4  opposition within 24 hours.  He failed to do so, however, or to
5  request an extension or continuance of the hearing.  Plaintiffs'
6  counsel appeared at the hearing on August 24, 2015 but was not
7  entitled to be heard pursuant to Local Rule 230, which provides
8  that "[n]o party will be entitled to be heard in opposition to a
9  motion at oral arguments if opposition to the motion has not been
10 timely filed by that party."  The court did not hear from
11 defendants and instead the matter was submitted on the briefs.
12         "[A] district court has no independent duty to scour
13 the record in search of a genuine issue of triable fact" or "to
14 undertake a cumbersome review of the record on the [nonmoving
15 party's] behalf."  Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011,
16 1017 (9th Cir. 2010).  Because plaintiffs have failed to file a
17 written opposition to the motion for summary judgment, in
18 reviewing the record the court is limited to considering those
19 documents referenced by defendants.
20 A. Standing to Bring Contract-Based Claims
21         Plaintiffs previously filed a nearly identical action
22 against defendants but voluntarily dismissed it.  See Jackson v.
23 Farmers Ins., Civ. No. 2:12-0120 WBC AC (E.D. Cal. filed Apr. 18,
24 2012).  The Jacksons then sold TJ in May 2013.  (Crain Decl. Ex.
25 5 ("Asset Purchase Agreement") (Docket No. 57-2).)  Plaintiffs
26 subsequently refiled the lawsuit against defendants.  Defendants
27 argue that plaintiffs lack standing to bring this lawsuit because
28 plaintiffs assigned their contract rights and related claims

1  pursuant to the Asset Purchase Agreement.

2      "Once a claim has been assigned, the assignee is the
3  owner and has the right to sue on it.  In fact, once the transfer
4  has been made, the assignor lacks standing to sue on the claim."
5  Searles Valley Minerals Operations, Inc. v. Ralph M. Parson Serv.
6  Co., 191 Cal. App. 4th 1394, 1402 (4th Dist. 2011) (citations
7  omitted); see Eagle Rock Entm't, Inc. v. Coming Home Prods.,
8  Inc., Civ. No. 2:03-00571, 2003 WL 25781234, at *2 (C.D. Cal.
9  Dec. 12, 2003) ("'An assignor may not maintain an action upon a
10 claim after making an absolute assignment of it to another; his
11 right to demand performance is extinguished, the assignee
12 acquiring such right.'" (citing McCown v. Spencer, 8 Cal. App. 3d
13 216, 225 (2d Dist. 1970))).

14     "To be effective, an assignment must include
15 manifestation to another person by the owner of his intention to
16 transfer the right, without further action, to such other person
17 or to a third person."  Barrier Specialty Roofing & Coatings,
18 Inc. v. ICI Paints N. Am., Inc., 2008 WL 2724876, Civ. No. 1:07-
19 01614, at *6 (E.D. Cal. July 11, 2008).

20     On May 18, 2013, the Jacksons sold TJ to Brian von
21 Tress.  The contracting parties agreed that the

> assets of the Business include[d], but [were] not limited to, any equipment, trade fixtures, leasehold, leasehold improvements, accounts receivable, <u>contract rights</u>, business records . . . software and software licenses, other licenses, franchises, goodwill, covenant not to compete, trade secrets, patents, intellectual property, trade name, customer lists, telephone and fax numbers, web sites, email addresses, inventory and backlog.

(Asset Purchase Agreement (emphasis added).)  The agreement

6

explicitly excluded bank accounts, deposits, cash, and financial records from the assets being sold.  (Id.)

By the plain meaning of the Asset Purchase Agreement, TJ sold its contract rights to Tress, which would have included any existing contract rights related to TJ's COD arrangement with Farmers.  TJ's contract rights regarding the COD Program were not among the assets specifically excluded from the sale.  Because of the unequivocal language used in the agreement, the parties appear to have manifested an intention to transfer TJ's rights regarding all of its contracts.  Barrier, 2008 WL 2724876, at *6.  The court finds no basis for adopting an alternative interpretation of the agreement.

Accordingly, plaintiffs may not maintain their state law contract claims against Farmers.  Through the Asset Purchase Agreement, Tress acquired the right to bring those claims on behalf of his purchased business.  See McCown, 8 Cal. App. at 225.

A party bringing a § 1981 claim is also required to have rights under the existing or proposed contract in question. The Supreme Court held that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make and enforce."  Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 479-80 (2006).  The Court rejected a broader test for § 1981 standing proposed by the respondent, where "[a]ny person who is an 'actual target' of discrimination, and who loses some benefit that would otherwise have inured to him had a contract not been impaired, may bring a suit."  Id. at 478.  The Court observed that this "is

just the statutory construction we have always rejected."

TJ sold its "contract rights" to Tress and has no existing right under the COD agreement.  Neither do the Jacksons have rights under the COD agreement, even if they were the "actual target" of discrimination, because the agreement was between TJ and Farmers.  See id. at 478.  Tress, and not plaintiffs, purchased the right to bring a § 1981 claim, arguing that TJ's contract with Farmers was impaired by race discrimination.  See McCown, 8 Cal. App. at 225.  Plaintiffs therefore also lack standing to bring their § 1981 claim.

B. Conspiracy Claim under 42 U.S.C. § 1985(3)

Subsection 1985(3) prohibits two or more persons from conspiring to deprive any person or class of persons of the equal protection of the laws.  "To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by 'some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir.1992)).

"[Section] 1985(3) does not itself create any substantive rights; rather, it serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere."  Brown v. Philip Morris Inc., 250 F. 3d 789, 805 (3d Cir. 2001).  When, as here, "the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment."  Jimenez v. Wellstar Health System, 596 F.3d

8

1304, 1312 (11th Cir. 2010).

Plaintiffs' Complaint does not describe with much clarity the right upon which their § 1985(3) claim is based, and because plaintiffs' counsel failed to file an opposition to the defendants' motion, the court is offered no further guidance. Plaintiffs allege defendants "conspired to create a means by which plaintiffs would be impaired in and under their rights arising under state and federal constitutions, as well as the contracts between Farmers, Truck, and the corporate plaintiffs." (Compl. ¶ 52.)  Plaintiffs therefore appear to base their § 1985(3) claim, at least in part, on their right to enter into contracts.

Assuming plaintiffs have standing to bring their § 1985(3) claim based on a violation of § 1981,[2] the § 1985(3) nevertheless fails for several reasons.  "[T]he Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3) . . . ."  Jimenez, 596 F.3d at 1312.  Consequently, other circuits have held that "conspiracies to violate rights protected under § 1981 are insufficient to form the basis of a § 1985(3) claim."  Id.; see Brown v. Philip Morris Inc., 250 F.3d 789, 806 (3d Cir. 2001) ("The great weight of precedential authority . . . supports the traditional limitation of § 1985(3) to questions of interstate travel and involuntary servitude and does not suggest that §§ 1981 or 1982 claims in general may form the basis of a § 1985(3)

---

[2]   The court need not address whether plaintiffs can maintain a claim under § 1985(3) based on a violation of § 1981 where they lack standing to bring a claim under § 1981.

1  action.").

2       Although the court is unaware of any Ninth Circuit
3  authority addressing the issue, the court is inclined to agree
4  with "the great weight of authority," particularly due to the
5  Supreme Court's conservatism regarding conspiracy claims against
6  private actors.  Plaintiffs therefore cannot base their § 1985(3)
7  claim on defendants' violation of § 1981.

8       Moreover, there is not a scintilla of evidence before
9  the court that a conspiracy existed between the named defendants
10 to interfere with plaintiffs' right to enter into a contract due
11 to plaintiffs' race.  Plaintiffs allege that "internal emails
12 between Gillis, Eason and Bailey . . . indicate that there was a
13 concerted effort by these three to remove plaintiffs from the COD
14 program" and that those defendants also made "racist comments."
15 (Compl. ¶ 54.)  Were this a motion to dismiss, the court would be
16 required to accept those allegations as true.  However, because
17 defendants move for summary judgment, and plaintiffs failed to
18 come forward with any evidence supporting those allegations or to
19 otherwise permit a reasonable trier of fact to draw the inference
20 that a conspiracy existed, plaintiffs' § 1985(3) claim must fail.
21 See Anderson, 477 U.S. at 252.

22       IT IS THEREFORE ORDRED that defendants' motion for
23 summary judgment be, and the same hereby is, GRANTED.

24 Dated:  August 24, 2015

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10